[Cite as *In re A.M.*, 2022-Ohio-4305.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

IN RE A.M.

COURT OF APPEALS NO. {22}E-22-006

TRIAL COURT NO. 2008-JB-084

**<u>DECISION AND JUDGMENT</u>**

Decided: December 2, 2022

* * * * *

Troy A. Murphy, Esq., for appellant, J.M.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal filed by appellant, J.M., from the January 26, 2022 judgment of the Erie County Court of Common Pleas, Juvenile Division, denying her motion for visitation with her grandchild. For the reasons that follow, we affirm the trial court's judgment.

{¶ 2} Appellant sets forth one assignment of error:

The trial court erred and abused its discretion by denying Appellant, Grandmother's, Motion for Visitation.

## Background

{¶ 3} Appellant is the paternal grandmother of A.M., a child born out of wedlock to appellant's son ("C.M." or "father") and his then-girlfriend, N.F. ("mother") in 2006. In 2008, father filed a complaint in the Erie County Court of Common Pleas, Juvenile Division, to establish paternity of A.M. and to allocate parental rights and responsibilities. In 2009, mother and father entered into a shared parenting plan. In 2013, the shared parenting plan was terminated, and father was designated residential parent and legal custodian of A.M.

{¶ 4} In 2014, appellant filed a motion to intervene in the juvenile case, and filed a motion for parenting time[1] with A.M. A hearing was held on the motion to intervene, and the magistrate denied the motion. Appellant filed objections. In 2016, the trial court filed its judgment entry granting appellant's motion to intervene, and scheduling a hearing on the motion for visitation.

{¶ 5} In 2018, a trial was held before a magistrate on appellant's motion for visitation. The magistrate issued a decision denying appellant's motion. Appellant filed objections. In January 2022, the trial court filed its judgment entry denying appellant's objections, and adopting the magistrate's decision. Appellant appealed.

---

[1] Although the motion was captioned as a motion for parenting time, appellant was seeking visitation time. As such, we will refer to the motion as a motion for visitation.

2.

3.

**Law**

{¶ 6} We review a juvenile court's decision regarding visitation rights under an abuse of discretion standard. *In re K.M.-B.*, 2015-Ohio-4626, 48 N.E.3d 998, ¶ 45 (6th Dist.). "An abuse of discretion requires more than an error in judgment; the trial court's decision must be found to be unreasonable, arbitrary, or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 7} At common law, a grandparent did not have any legal right of access to a grandchild. *In re Whitaker*, 36 Ohio St.3d 213, 214, 522 N.E.2d 563 (1988). Thus, any right to visitation a grandparent may have must be provided for by statute. *In re Martin*, 68 Ohio St.3d 250, 252, 626 N.E.2d 82 (1994). One such statute, R.C. 3109.12, allows grandparents of a child born to an unmarried woman to request visitation with the child.

R.C. 3109.12 states in relevant part:

(A) * * * If a child is born to an unmarried woman and if the father of the child has acknowledged the child and that acknowledgment has become final * * * or has been determined in an action under Chapter 3111. of the Revised Code to be the father of the child, * * * the parents of the father * * * may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child.

(B) The court may grant the * * * companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the * * * companionship or visitation rights is in the best

4.

interest of the child. In determining whether to grant * * * reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of * * * reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section.

Relevant factors under R.C. 3109.051(D) include:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *;

(2) * * * [I]f the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers * * * regarding the wishes and concerns of the child as to * * * companionship or visitation by the grandparent, * * * as to a specific * * * visitation schedule, or as to other * * * visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) * * * [W]ith respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

* * *

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

{¶ 8} Of the foregoing factors, a parent's wishes are entitled to "special weight." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, paragraph one of the syllabus. This special weight is granted as it is presumed that a fit parent determines what is in the best interest of their children. *Id.* at ¶ 44, citing to *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). *See also In re K.M.-B.*,

2015-Ohio-4626, 48 N.E.3d 998, at ¶ 43.  However, the law does not require the parent's wishes to be placed before a child's best interest.  *Harrold* at ¶ 44.  It has been recognized by the Supreme Court of Ohio that a grandparent-grandchild relationship is important and that "maintenance of this relationship may be in the best interest of the child."  *In re Whitaker* at 216-17.  The burden of establishing that visitation would be in the child's best interest falls upon the grandparent.  *In re K.M.-B.* at ¶ 43.

### The Trial

{¶ 9} At the October 11, 2018 trial on appellant's motion for visitation, she testified and called several witnesses to testify; father also testified.  The relevant testimony is summarized below.

{¶ 10} Appellant testified that father and mother lived together with A.M. in Sandusky, Ohio, from the time of A.M.'s birth until December of 2008.  During that time, appellant and her husband[2] watched A.M. every weekend, sometimes at their home in Warren, Ohio, and sometimes in a hotel in Sandusky, Ohio.

{¶ 11} In December of 2008, just before Christmas, father was arrested for domestic violence.  A.M. then lived with her mother in Sandusky, Ohio, and for a time, father was not allowed to have visitation with A.M.  Initially, appellant did not see A.M. much, but in time, appellant spent more time with A.M. because mother's family was not in a position to watch A.M. often.

---

[2] Appellant's husband passed away in March 2013.  He was C.M.'s dad and A.M.'s grandfather.

7.

{¶ 12} Eventually, father and mother had shared parenting of A.M., and appellant and her husband had visitation with A.M. at their Warren, Ohio home from Sunday morning until Wednesday night. Father lived in an apartment rent-free, in Warren, Ohio, which was owned by appellant and her husband. Sometimes A.M. would go over to the apartment for visitation, but appellant said father "was having a lot of trouble with drugs and alcohol at the time as well."

{¶ 13} When A.M. turned three years old, appellant enrolled A.M. in preschool for two days a week. According to appellant, "it got to the point where [mother's] drug use got so bad that [mother] didn't have the means to come and get [A.M.], so I would just keep [A.M.]." Appellant explained from the time when A.M. was three years old until 2013, when A.M. was seven, A.M. basically stayed with appellant and her husband all of the time, although father was A.M.'s guardian parent. During that period, father would see A.M. once a week or once every two weeks. Appellant would take A.M. to doctor appointments and pay for over the counter medicines. Appellant enrolled A.M. in school, dancing, Girl Scouts, swim lessons, tennis lessons, piano lessons and camp. Appellant helped A.M. with her homework, ensured A.M. attended her lessons, and paid for A.M.'s lessons, activities and camp.

{¶ 14} In the summer of 2013, father moved with A.M. to the greater Columbus, Ohio area. Father had met a woman, and they ultimately married. Appellant tried to stay involved in A.M.'s life, by phoning and by mailing A.M. something every once in a while. Appellant also attempted to communicate with father by phone calls and texts.

8.

There were several occasions where appellant asked father if she could get together with A.M., but father said no or did not respond.

{¶ 15} In May 2017, appellant went to A.M.'s school to teach a program about gardening, and she talked to father about the anticipated visit before she contacted the school.

{¶ 16} In the summer of 2017, A.M. attended camp, paid for by appellant. After camp, appellant picked A.M. up and they went to appellant's boat. Appellant received text messages from father about whether appellant had picked up A.M. Appellant said it was known that she was picking A.M. up, as it had all been arranged. Also that summer, appellant took A.M. to look at dresses for appellant's October 2017 wedding. In September 2017, appellant sent out wedding invitations, including one to father. She did not know if A.M. was going to be in the wedding until a week prior to the wedding.

{¶ 17} Appellant would like to see A.M. one weekend per month, two weeks in the summer and one week for spring break.

{¶ 18} On cross-examination, appellant acknowledged that she and father have an unhealthy relationship. She claimed they had a wonderful relationship when he was growing up, but it broke down when he got into drugs and alcohol.

{¶ 19} Father testified to the following. He lives in Gahanna, Ohio, and A.M. attends school there. Father and A.M. previously lived in Pataskala, Ohio for about two years, where A.M. attended middle school. In the 2017-2018 school year, A.M. was absent from school 15 times, was tardy 15 times and received a D+ in math, an F in

9.

science, an A in band, an A in physical education, a B in social studies and a B in language arts. Father noted some of A.M.'s grades went up, while some went down from grade period to grade period.

{¶ 20} Father denied that A.M. primarily lived with appellant for a time. Rather, from 2008 to 2013, A.M. lived with him while he lived at his parents' house, as his parents offered to support him while he was getting on his feet. Father disagreed that he had a drug addiction issue at that time, but admitted he used to drink a lot while he was a bartender. He believed he quit bartending when A.M. was one or one and a half years old. Father acknowledged appellant assisted in the caretaking of A.M. when they lived together, and appellant spent time with A.M. and took A.M. places, but when it came to parenting A.M., it was combative with appellant. There were also things that appellant did with A.M. which did not meet with father's approval, such as appellant screamed at A.M. while A.M. was playing the piano, slept in the same bed as A.M., and showered with A.M. Father voiced his disapproval to appellant, but appellant continued with these behaviors.

{¶ 21} At some point, father lived in a house in Warren, Ohio, next to his dad's office, which his dad owned.

{¶ 22} In May 2017, appellant went to A.M.'s school to teach a program about gardening, and father found about it after A.M. told him that appellant had been at the school. Father had a conversation with appellant and asked why she had not communicated with him, and she said it was last minute and she did not have time.

10.

{¶ 23} Father believed A.M. went to summer camp in 2016 and 2017, which was arranged and paid for by appellant. After summer camp in 2017, appellant picked A.M. up, but there was no communication with father, and he was not informed that A.M. had been picked up or where she was.

{¶ 24} Concerning appellant's wedding, father stated neither he nor A.M. had been invited to the wedding when appellant asked him if she could take A.M. wedding dress shopping. Father testified appellant wanted A.M. to attend and be a bridesmaid in appellant's wedding, but did not invite him. Father was invited to the wedding in a conversation he had with appellant where he expressed to her that neither he nor A.M. had been asked to attend the wedding. Father never received an invitation in the mail.

{¶ 25} A.M. did not go to summer camp in 2018. In the summer of 2018, A.M. spent a month with her mother, who lives in Kentucky. Father said he and mother have a fantastic relationship regarding A.M. and communicate frequently about A.M.

{¶ 26} Father listed numerous occasions that appellant has had contact with A.M. since she filed her motion for visitation, including vacationing together in Florida in January 2017, seeing a movie together, and talking on the phone. Additionally, appellant conducted a gardening class at A.M.'s school and attended A.M.'s band performance. Father testified A.M. has a cell phone, for which he pays, and A.M. has appellant's phone number. He has never told A.M. not to call appellant.

{¶ 27} As A.M.'s residential parent, father does not object to appellant having visitation with A.M., but he objects to having court-ordered visitation, as a court order is

11.

not open for communication between the two parties, and it controls when A.M. can and cannot do something. He finds this unfair to A.M since A.M. is involved in extracurricular activities, has friends and babysits. Father believes that anybody who wants to have a relationship with his daughter should also have a relationship with him, and appellant made it very clear that she was not interested in having a relationship with him. He reached out to appellant on the phone a couple of months before the trial because he wanted to put the past behind them and move forward, as he desired a relationship with her. Appellant told father he had to apologize for things he did, so he apologized. Appellant then wanted him to apologize for something specific, and when he asked what it was, she said if he did not know, she was not going to tell him.

**Magistrate's Decision**

{¶ 28} In its October 24, 2018 decision, the magistrate set forth findings of fact, including: A.M. resided almost exclusively with appellant and her husband from 2008 until 2013, during which time father had sporadic contact with A.M.; in 2013, father removed A.M. from appellant's home and A.M. has resided with father in several residences; appellant has continued to actively seek a role in A.M.'s upbringing; appellant visits with A.M. when allowed, pays for camp and takes A.M. shopping; appellant last saw A.M. and father at appellant's fall 2017 wedding; mother lives in Kentucky and has parenting time with A.M.; no evidence was presented about father's current employment, financial status, ability or inability to provide for A.M.; and father

12.

stated he will continue to allow appellant to visit with A.M., but does not want court-ordered visitation.

{¶ 29} The magistrate cited to *Troxel*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 and *In re K.M.-B.*, 2015-Ohio-4626, 48 N.E.3d 998. The magistrate noted appellant presented no testimony or evidence that father is unfit, she merely disagrees with father limiting her access to A.M. The magistrate observed he is required to give great weight and deference to father's wishes regarding visitation, and determined father's wishes are neither unreasonable nor arbitrary. The magistrate denied appellant's motion.

{¶ 30} Appellant objected to the magistrate's decision, and the magistrate's reliance on *In re K.M.-B.* Appellant also argued that father was unfit.

### Trial Court's Judgment Entry

{¶ 31} In its January 26, 2022 decision, the trial court stated it reviewed the pleadings, filings, transcript and exhibits, and noted appellant filed objections to the magistrate's decision which recommended that her motion for visitation be denied. The court observed the magistrate relied on the findings in *In re K.M.-B.*, which appellant argued were misapplied to the facts of her case.

{¶ 32} The court found appellant's entitlement to visitation with A.M. is governed by R.C. 3109.12, which requires that appellant prove a visitation order is in A.M.'s best interest. The court noted R.C. 3109.051(D)(1) through (16) are factors to be considered when deciding what is in A.M.'s best interest. The court observed neither the magistrate

13.

nor appellant specifically referred to the R.C. 3109.051 factors, although the magistrate did mention some relevant facts.

{¶ 33} Regarding the R.C. 3109.051 factors, the court found: as to R.C. 3109.051(D)(1), A.M. has had a relationship with appellant for her entire life, father is A.M.'s legal custodian and mother has a relationship with and visits A.M.; as to R.C. 3109.051(D)(2), father lives with A.M. in central Ohio, mother lives about two hours away in Kentucky while appellant lives in northern Ohio, about two and half-hours away from A.M. and the opposite direction from mother's home; as to R.C. 3109.051(D)(3), mother has regular visits with A.M., father works full time and is required to work some evening and weekend hours, A.M. attends school and has typical school breaks; as to R.C. 3109.051(D)(4), A.M. is 12 years old (at the time of trial); as to R.C. 3109.051(D)(5), A.M. is adjusted to her home, school and community, she participates in extracurricular activities and spends time with friends; as to R.C. 3109.051(D)(6), A.M. was interviewed by the magistrate. A.M. is well-spoken, mature and clearly articulated her desires, including that she wants to spend more time with her mother and she prefers the flexibility of no set schedule as her life has become busier as she has gotten older (The court noted its decision is consistent with her wishes.); as to R.C. 3109.051(D)(10), father made accommodations to facilitate visits between appellant and A.M. on some occasions, but he became less accommodating when appellant would not abide by his requests; and as to R.C. 3109.051(D)(15), father objects to appellant's motion as he feels

14.

it is not necessary since A.M. has had contact with appellant without a schedule or court order.

{¶ 34} The court acknowledged the magistrate determined father's wish for no visitation orders was entitled to great weight per R.C. 3109.051(D)(15), and outweighed any factor favoring appellant's motion. The court observed, "[e]ssentially, the Magistrate is holding that the facts of the case do not justify superseding the Father's judgment about [A.M.]'s contact with [appellant]."

{¶ 35} After reviewing the evidence presented, the court agreed with the magistrate's decision. The court noted "[appellant] desires a schedule despite the fact that she has regular contact with [A.M.] * * * [and] Father has not kept [A.M.] from having a relationship with [appellant]." The court found appellant's request was unreasonable given: the distance that she lives from A.M.; A.M.'s age; and mother's visits, which have to be a priority over appellant's visits. The court found A.M. "desires things to remain as they have been (no set schedule). * * * She objects to a set schedule and prefers the flexibility that Father stated he also desires." The court also found appellant's "true issue is the lack of a healthy relationship with her son which results in difficulty communicating effectively. [She] also appears intolerant of Father's views and wishes."

{¶ 36} The court decided it was in A.M.'s best interest to have a relationship, visitation and contact with appellant, and "the facts are that this is occurring without a court order to do so." The court recognized that father objected to formalizing or

15.

mandating a schedule, while appellant "wants a schedule ordered that is out of line with the child's availability and this conflicts with Mother's visitations rights which certainly have to be considered superior to Grandmother's." The court observed appellant had the burden to prove that establishing an order was in A.M.'s best interest, and appellant failed to do so. The court overruled and denied appellant's objections, and approved and adopted the magistrate's decision.

**Appellant's Arguments**

{¶ 37} Appellant contends A.M. resided almost exclusively with her from 2008 until 2013, and appellant was responsible for enrolling A.M. in school and lessons and ensuring A.M. attended school, did her homework and participated in her lessons. Appellant argues father had sporadic contact with A.M. during this time, and father did not have stable finances, so appellant and her husband helped to support father and A.M.

{¶ 38} Appellant maintains after father removed A.M. from appellant's home in 2013, appellant continued to seek a role in A.M.'s life. Over time, father reduced the amount of time appellant could see A.M., as he indicated appellant did not follow his orders.

{¶ 39} Appellant argues the magistrate denied her motion for visitation "on the grounds that, absent allegations of unfitness, the court must give special weight to the wishes of the parents" based on *In re K.M.-B.* She asserts while "there was sufficient evidence submitted to establish that father is unfit, * * * no finding that father is unfit is required." Appellant claims "[i]n adopting the Magistrate's Decision, the trial court

relied on the matter of <u>In re: K.M.B.</u>, [sic] 2015-Ohio-4626, in concluding that a finding of Father being unfit is required and that, in the absence of such a finding, the trial court was required to give great weight and deference to Father's wishes regarding grandmother's visitation." Appellant insists the court's reliance on *In re K.M.-B.* is erroneous. She claims "[t]he Court of Appeals of Ohio, Sixth Appellate District, specifically stated the decision rendered in <u>In re K.M.B.</u> [sic] was based on the facts (1) there was no evidence presented the grandmother was more involved in the child's life and (2) the grandmother did not assume any parental-like duties. The instant matter is actually the complete opposite of these facts." Appellant offers that she called several witnesses at trial who confirmed that she did assume parental-like duties and was more involved in A.M.'s life. Thus, appellant reasons since she assumed parental-like duties for approximately five years, "it is not necessary for the Court to make a finding that the parents are unfit and subsequently, that no special weight must be afforded the wishes of the parents."

{¶ 40} While appellant maintains no finding of parental unfitness is required, she argues sufficient evidence was presented to find father unfit, and she contends there is ample evidence that father is unable to provide a stable living environment for A.M. Appellant submits father testified that in the eight months prior to trial, he and A.M. lived at three different addresses, and A.M. had to switch schools with one month left in the academic year. Appellant contends A.M.'s academics suffered as a result of the move, and "[e]xacerbating the declining performance was A.M.'s poor attendance record for the

2017-2018 school year." Appellant claims "A.M.'s attendance was so poor as a result of Father's unfitness as a parent to ensure her attendance was proper that A.M. received a one (1) week detention due to her attendance in December, 2017."

**Analysis**

**{¶ 41}** Initially, we address appellant's claim that when we decided *In re K.M.-B.*, we "specifically stated the decision * * * was based on the facts (1) there was no evidence presented the grandmother was more involved in the child's life and (2) the grandmother did not assume any parental-like duties." A reading of *In re K.M.-B.* reveals the second assigned error was "the trial court erred in determining that it had jurisdiction to award grandparent visitation regarding [T.M.]." *Id.* at ¶ 1. We found R.C. 3109.12(A) governed the issue of the grandmother's right of visitation with T.M., and we further found the statute was unconstitutional as applied to the case. *Id.* at ¶ 27, 40. We held:

> [T]he purposes behind the statute are not achieved by application of the statute. Here, the "unwed" mother was living with the father of the child at time of his birth and they married shortly thereafter. * * * This was also not a case where a relative had to assume parental-like duties because the child was born out of wedlock. The circumstances of the child's birth did not give rise to a relationship between a relative and the child. While the grandmother had participated in the life of the grandchild since his birth, there was no evidence the grandmother was more involved in the child's life because of the circumstances of his birth. *Id.* at ¶ 39.

{¶ 42} In the third and fourth assigned errors, with respect to another child, K.M.-B., who was born out of wedlock to parents who never married, it was argued the trial court abused its discretion[3] in awarding grandmother visitation, and the trial court failed to give sufficient weight to the wishes of the fit parent. *Id.* at ¶ 41. It was conceded R.C. 3109.12(A) applied. *Id.* at ¶ 42. We found:

> A presumption exists that fit parents determine the best interests of their children. Therefore, absent allegations of unfitness, the court must give special weight to the wishes of the parent. R.C. 3109.051(D)(15); *Troxel*, 530 U.S. at 68, 120 S.Ct. 2054, 147 L.Ed.2d 49; *Harrold*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, at ¶ 12; and *In re E.T.B.*, 12th Dist. Clermont No. CA2014-07-051, 2015-Ohio-2991, 2015 WL 4515514, ¶ 31. The burden of proving the best interest of the child warrants nonparent visitation rests with the nonparent. *In re N.C.W.*, 12th Dist., 2014-Ohio-3381, 17 N.E.3d 119, ¶ 25-26. *Id.* at ¶ 43.

{¶ 43} We further found:

> The court must determine whether such grandparent visitation would be in the child's best interest after considering all relevant factors, including the factors listed in R.C. 3109.051(D). *In re K.C.*, 12th Dist. Butler No.

---

[3] Mother argued the manifest weight of the evidence did not support the trial court's decision. *Id.* at ¶ 41. We noted mother erroneously stated the appellate standard of review, as the proper standard is abuse of discretion. *Id.* at ¶ 45.

19.

CA2012-08-160, 2013-Ohio-1949, 2013 WL 1944207, ¶ 8 (applying the factors of former R.C. 3109.051(B), now incorporated into R.C. 3109.051(D)). * * * *Id.* at ¶ 44.

{¶ 44} Here, appellant did not assign as error that the trial court erred in determining that it had jurisdiction to award her visitation of A.M., or that R.C. 3109.12 was unconstitutional as applied to her case. Instead, she argued the trial court erred and abused its discretion by denying her motion for visitation. As such, appellant's assigned error is aligned with the third assigned error in *In re K.M.-B.*, not the second assigned error. Therefore, the analysis and finding concerning the third assigned error in *In re K.M.-B.* is applicable to appellant's case, not the analysis and finding as to the second assigned error. Since the particular finding in *In re K.M.-B*, on which appellant relies is inapplicable to her case, we find no merit in her arguments based on this claim.

{¶ 45} As to the trial court's judgment, upon review, we conclude the trial court applied the correct law, as the court found appellant's entitlement to visitation with A.M. was determined pursuant to the provisions in R.C. 3109.12, and appellant had to prove a visitation order is in A.M.'s best interest. We further conclude the court gave due consideration to all relevant factors, including pertinent R.C. 3109.051(D) factors, when it determined it was in A.M.'s best interest not to order visitation with appellant. The court considered the relationships between A.M., appellant, father and mother, and noted the contentious relationship between appellant and father. The court gave due deference to the geographical distances between appellant, A.M., father and mother. The court

20.

considered that A.M. expressed affection for appellant, but A.M. does not desire a set visitation schedule with appellant. The court also considered that even without a schedule or court order, A.M. has had contact with appellant.

{¶ 46} Regarding the issue of parental fitness, appellant's position, in her appellate brief, is no finding of unfitness of a parent is required, yet she argues sufficient evidence was presented to find father unfit. We also note in appellant's motion for visitation, she did not allege father is unfit. Rather, she alleged she "was forced out of the life of her granddaughter. [Father's] decision in this regard was contrary to the best interests of [A.M.]." Appellant further alleged she "believes the evidence will show [father] is motivated not to do that which is best for his daughter; he is instead seeking to use [appellant's] love for her granddaughter * * * as a means by with to extort money from [appellant]." Nonetheless, the magistrate found appellant "presents no testimony or evidence that father is unfit," and the magistrate was required to give great weight and deference to father's wishes regarding visitation. The trial court did not specifically mention the issue of parental fitness in its judgment entry. However, it is clear the court properly considered all relevant factors before arriving at its decision that appellant had not met her burden of establishing a visitation order was in A.M.'s best interest.

{¶ 47} We conclude the trial court's judgment in not unreasonable, arbitrary, or unconscionable. We therefore conclude the trial court did not abuse its discretion when it denied appellant's motion for visitation. Accordingly, appellant's assignment of error is found not well-taken.

21.

{¶ 48} The judgment of the Erie County Court of Common Pleas, Juvenile Division, is hereby affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.

| Mark L. Pietrykowski, J. | [[Applied Signature]] |
| | JUDGE |
| Thomas J. Osowik, J. | [[Applied Signature 2]] |
| | JUDGE |
| Myron C. Duhart, P.J. | [[Applied Signature 3]] |
| CONCUR | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.