DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Ashley G., appeals the July 23, 2007 judgment of the Williams County Court of Common Pleas, Juvenile Division, which granted appellees Robin G. and Verna S.'s R.C. 3109.12
motion for visitation of minor child Hadden S. Because we find that the trial court did not abuse its discretion, we affirm. *Page 2 
 {¶ 2} This case commenced on November 22, 2005, when Jared S. filed a paternity complaint requesting a court order that he, appellant, and Hadden S. submit to genetic testing. Appellant filed an answer agreeing to genetic testing. Thereafter, Jared S. was found to be Hadden's natural father and a visitation schedule and child support order was implemented.
 {¶ 3} On February 26, 2007, Robin G., Hadden's maternal grandfather, filed a motion for visitation pursuant to R.C. 3109.12; on April 27, 2007, Robin G.'s attorney filed a motion requesting that Verna S., Hadden's maternal great-grandmother, be included in the request for visitation.
 {¶ 4} On May 24, 2007, a hearing was held on the motion for visitation. A portion of the hearing was not recorded. Appellant submitted a proposed agreed statement of the facts which was approved by the court. The following relevant testimony was presented in the proposed statement of the facts and the hearing transcript. Verna S. testified that appellant and Hadden lived with her from August 10 until December 2006, and that appellant would leave Hadden alone with her and Robin. Verna testified that she is not comfortable having visitation with Hadden at appellant's home; Verna would rather have the visits take place at her home.
 {¶ 5} Verna responded negatively when asked whether she remembered appellant being abused by Robin when she was growing up. Verna stated that she is 73 years old and walks with the aid of a walker. *Page 3 
 {¶ 6} Boyd S. testified that he lived near Verna and Robin. Boyd stated that he had seen Robin and Hadden alone together and that Verna spent a lot of time with Hadden. Boyd stated that he allowed his eight year-old daughter to visit Robin's and Verna's residence and that he knows that Robin has a criminal history.
 {¶ 7} Robin G. testified that he had custody of appellant and her sister Haley during their childhood. Robin stated that he had a good relationship with his other daughters and with Haley's child. Robin testified that he frequently cared for Hadden.
 {¶ 8} Regarding his criminal history, Robin testified that he had two domestic violence charges and two drug convictions, the last one in 2002. Robin stated that he does not believe that his past problems are a problem now. Robin testified that he has never been abusive toward appellant.
 {¶ 9} Hadden's father, Jared S., testified next. Jared stated that on two or three occasions he observed bruises on appellant. Jared testified that appellant stated that her father hit her; he did not witness any abuse. Jared testified that about one time per month Robin and Verna babysat Hadden.
 {¶ 10} Jared testified that he and appellant agreed to shared parenting, alternating their weeks with Hadden. Jared stated that he did not want to have Robin's and Verna's visitation interfere with his parenting time and that appellant felt the same. Jared testified that if visitation was ordered he was afraid of what Robin might say to Hadden and he was afraid that Hadden would be confused. *Page 4 
 {¶ 11} Appellant's friend, Cecelia R., testified next. Cecelia testified that on December 1, 2006, appellant telephoned her and stated that Robin had hit her. Cecelia went to Robin's and Verna's home and observed a bruise on appellant's arm. Cecelia testified that she helped appellant pack her belongings to move out of Robin's and Verna's home. At the time, appellant was pregnant with her second child. She currently resides with that child's father.
 {¶ 12} Jonathon M. testified that since December 1, 2006, appellant and Hadden have lived with him. Jonathon testified that Robin began acting "strangely" right before appellant moved in with him. Jonathon testified that during this time, appellant telephoned him and said that Robin hit her. Jonathon stated that appellant's arm was bruised. According to Jonathon, he confronted Robin who initially denied striking appellant. Jonathon testified that Robin eventually admitted it and said that the reason appellant was so difficult to deal with was that "she wasn't beat enough as a child." Jonathon denied any knowledge of appellant striking her grandmother, Verna.
 {¶ 13} Appellant was the final witness to testify. Appellant stated that Verna raised her; Robin was not very involved. Appellant testified that Robin was a drug addict and that he struck her more than once during her childhood. Appellant denied ever hitting her grandmother.
 {¶ 14} Appellant testified that she did not want Hadden around her father because he degrades her in front of Hadden and uses profanity. According to appellant, Hadden *Page 5 
began repeating some of the words. Appellant also testified that she fears that Robin will hit Hadden.
 {¶ 15} Appellant then testified about the amount of time appellees spent caring for Hadden. Appellant testified that Robin watched Hadden a few times per month but that appellant and her grandmother were the primary caregivers. Appellant testified that she had moved out of her grandmother's home but that, due to an illness and pregnancy, she had to return.
 {¶ 16} Appellant testified regarding the December 1, 2006 incident. Appellant stated that she had been packing boxes in preparation for her move to Jonathon M.'s home. Appellant, then pregnant, sat down to rest when she and her father got into an argument. According to appellant, Robin pushed her down onto the floor and punched her in the arm.
 {¶ 17} During cross-examination, appellant testified that when she was working a lot of overtime, Hadden would go to a caregiver in Montpelier, Ohio. Appellant admitted that Hadden would sometimes stay home with Robin. Appellant also admitted that Robin does love his grandson but that she does not "want Hadden to go through the things that [she] went through." Three photographs were admitted into evidence that depict Hadden interacting with Robin.
 {¶ 18} During rebuttal, Robin denied striking appellant in December 2006. Robin also denied telling appellant that her problems existed because she was not beaten enough as a child. Verna testified that on the date in question, appellant was about to strike her *Page 6 
when Robin intervened by grabbing appellant's arm. Appellant denied trying to hit Verna.
 {¶ 19} On May 30, 2007, the magistrate found that it was in "the child's best interest to allow him regular contact with his great-grandmother Verna [S.] and grandfather Robin [G.]." The court determined that appellees would have visitation with Hadden the entire third weekend of every month. Appellant filed objections to the magistrate's decision; on July 23, 2007, the trial court, after an independent review, adopted the magistrate's decision. This appeal followed.
 {¶ 20} Appellant now raises the following three assignments of error for our review:
 {¶ 21} "1. The trial court erred in ignoring the wishes of the parents of the minor child, [Hadden S.], to avoid visitation between the grandfather Robin [G.] and the child as well as to limit visitation between the great-grandmother Verna [S.] and the child.
 {¶ 22} "2. The court ordered visitation between [Hadden S.] and the grandfather Robin [G.] as well as between [Hadden S.] and his great-grandmother Verna [S.] was not in the best interest of the child.
 {¶ 23} "3. That the trial court's decision to grant grandfather Robin [G.] and the great-grandmother Verna [S.] a fixed weekend visitation on every month with the minor child [Hadden S.] is against the manifest weight of the evidence."
 {¶ 24} In appellant's first assignment of error, she argues that the trial court erroneously ignored her and Jared's wish that Robin be denied visitation and that Verna *Page 7 
have limited visitation at appellant's home. We first note that an appellate court will not reverse the trial court's determinations as to visitation issues absent an abuse of discretion. In re Whaley (1993), 86 Ohio App.3d 304, 317, citing Booth v. Booth (1989), 44 Ohio St.3d 142. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 25} In Harrold v. Collier, 107 Ohio St.3d 44, 2005-Ohio-5334, the Supreme Court of Ohio, certifying a conflict between the Ninth and Seventh Appellate Districts, addressed the issue of "`[w]hether Ohio Courts are obligated to afford "special weight" to the wishes of the parents of minor children concerning non-parental visitation as outlined in Troxel v. Granville (2000), 530 U.S. 57.'" Id. at ¶ 7. The court answered that question in the affirmative. While the trial court is required to consider the wishes of the parents regarding the requested visitation, the Harrold court noted that "nothing in Troxel suggests that a parent's wishes should be placed before a child's best interest." Id. at ¶ 44.
 {¶ 26} The Harrold court then, in a discretionary appeal from the same case, was asked to determine the constitutionality of Ohio's nonparental-visitation statutes, R.C. 3109.11 and 3109.12. The court concluded that they were constitutional in that "[t]he state has a compelling interest in protecting a child's best interest, and Ohio's nonparental-visitation statutes are narrowly tailored to serve that compelling interest." Id. at paragraph two of the syllabus. *Page 8 
 {¶ 27} Relevant to the case before us, R.C. 3109.12 provides:
 {¶ 28} "(A) If a child is born to an unmarried woman, the parents of the woman and any relative of the woman may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child. If a child is born to an unmarried woman and if the father of the child has acknowledged the child and that acknowledgement has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code or has been determined in an action under Chapter 3111. of the Revised Code to be the father of the child, the father may file a complaint requesting that the court of appropriate jurisdiction of the county in which the child resides grant him reasonable parenting time rights with the child and the parents of the father and any relative of the father may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child.
 {¶ 29} "(B) The court may grant the parenting time rights or companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the parenting time rights or companionship or visitation rights is in the best interest of the child. In determining whether to grant reasonable parenting time rights or reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code." *Page 9 
 {¶ 30} In addition, R.C. 3109.051(D) sets forth 16 factors for the court to consider, including: "In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court." R.C.3109.051(D)(15).
 {¶ 31} Appellant contends that the trial court in awarding Robin and Verna visitation completely ignored her wishes and the father's wishes. In the magistrate's May 30, 2007 decision, the magistrate quoted the relevant statutory factors and indicated that the factors were applied to the case. The magistrate stated that "the parent's wishes are that Verna [S.] may see Hadden, however, they want no contact between the child and Robin [G.]" Thereafter, the magistrate thoroughly explained its reasoning for awarding visitation to appellees. It is apparent that the magistrate found appellees' testimony to be more credible; however, the "weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact." State v. DeHass (1967),10 Ohio St.2d 230 at paragraph one of syllabus. Accordingly, because we cannot find that the trial court abused its discretion when it granted appellees' motion for visitation, we find that appellant's first assignment of error is not well-taken.
 {¶ 32} Appellant's second assignment of error contends that the court-ordered visitation was not in Hadden's best interest. Specifically, appellant contends that there was no testimony presented to substantiate that there was any "significant interaction" between Robin and Hadden. *Page 10 
 {¶ 33} In the magistrate's decision, she found that Hadden lived in appellees' home for approximately 17 months, exclusive of approximately one month when appellant lived in an apartment. The magistrate noted that a neighbor testified that he frequently observed Verna with Hadden; he also observed Hadden in Robin's care. The magistrate then concluded that given "the fact that Hadden has enjoyed a long, secure and loving relationship with his grandfather and great-grandmother, the court finds it in the minor child's best interest to be assured of continued contact with his extended family with whom he has resided for extended periods of his short life."
 {¶ 34} Based on the foregoing, we find that the trial court considered Hadden's best interest and did not abuse its discretion when it found that visitation with appellees was in furtherance of Hadden's best interest. Appellant's second assignment of error is not well-taken.
 {¶ 35} In appellant's third and final assignment of error, she argues that the trial court's visitation award was against the manifest weight of the evidence. This assignment of error raises the same arguments that were addressed in the preceding assignments of error. Thus, based upon our disposition of appellant's first and second assignments of error we find that appellant's third assignment of error is not well-taken.
 {¶ 36} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair proceeding and the judgment of the Williams County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in *Page 11 
preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., William J. Skow, J., CONCUR. *Page 1