**[Cite as *Wentz v. Wideman*, 2021-Ohio-2257.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Gregory Wentz, et al.                                 Court of Appeals No. WD-20-080

    Appellee                                 Trial Court No.  2019 JG 0711

v.

Abigail Wideman                                 **DECISION AND JUDGMENT**

    Appellant                                 Decided:  June 30, 2021

* * * * *

Christopher M. Frasor and Carl C. Ireland, for appellees.

Emmett E. Robinson, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, Abigail Wideman, from

the October 20, 2020 judgment of the Juvenile Division of the Wood County Common

Pleas Court.  For the reasons that follow, we affirm the judgment of the trial court.

## Assignments of Error

1. The trial court abused its discretion by misapplying the governing statutory scheme and precedent regarding court-ordered grandparent visitation.

2. The applicable grandparent-visitation statute – R.C. 3109.11 – is unconstitutional as applied to this case.

## Background

{¶ 2} O.H. and J.H. are the biological children of Wideman and Matthew Hudson. Although Wideman and Hudson participated in a marriage ceremony, they were not legally married.[1] O.H. was born on November 6, 2016, and J.H. was born on January 14, 2020. Hudson died of a drug overdose on June 22, 2019, prior to J.H.'s birth. The children now reside with Wideman in Perrysburg, Ohio.

{¶ 3} Appellees, Jodi Wentz and Gregory Wentz, are Hudson's mother and step-father, and the paternal grandmother and paternal step-grandfather to O.H. and J.H. The Wentzes live in Mogadore, Ohio, approximately two hours and fifteen minutes from Perrysburg, Ohio. On October 4, 2019, appellees filed a Complaint to Establish Grandparents' Visitation and Companionship Rights requesting "reasonable visitation and companionship with their grandchildren."

---

[1] According to Wideman, their marriage license was never filed with the state.

2.

{¶ 4} A hearing was held before a magistrate on July 17, 2020, where the magistrate heard testimony from the parties, the guardian ad litem ("GAL"), and Susan Noyes Oliveira, a friend of appellees.

{¶ 5} Much of the testimony presented at the hearing was uncontroverted. The parties seem to agree that Wideman is a fit parent, with Mrs. Wentz going as far as to call her "exceptional." The Wentzes are both employed. They work during the week and would be able to spend time with the children on the weekend. They do not believe the distance between their house and Wideman's is a problem and Wideman believes they would visit if allowed.

{¶ 6} Prior to July of 2018, the Wentzes were active in O.H.'s life, visiting on a regular basis and celebrating holidays with Wideman, Hudson and O.H. They also all took a family vacation together in July of 2018. During this period, the parties generally were "on good terms," although Wideman also stated that Mrs. Wentz and her "had an issue pretty much [her and Hudson's] whole relationship." Wideman did not have any concerns with the Wentzes caring for O.H., as she thought they were "safe and appropriate." However, the Wentzes have not had any contact with O.H. since July 2018, and have never met J.H. Photos and videos of the Wentzes interacting with O.H. were also admitted into evidence.

{¶ 7} While the parties agree that the Wentzes have not had any contact with the children since July of 2018, the record is not clear as to the reason for the cessation in contact. The evidence shows that Hudson struggled with substance abuse issues and that

3.

he and Wideman had a contentious relationship that, at one point, resulted in Hudson's arrest for domestic violence. According to Mrs. Wentz, prior to Hudson's death, she told Wideman and Hudson that they needed to "get things together for [O.H.]." She also testified to her belief that it was Hudson's "responsibility and his role to unite his family and involve his parents." For her part, Wideman stated that the conflict began because she did not like the way Mrs. Wentz treated Hudson and because Mrs. Wentz "wanted everything to be her way." The rift was further aggravated by circumstances surrounding Hudson's death and funeral. However, both Mr. and Mrs. Wentz testified that they would like Wideman and the children to be part of their family and Mrs. Wentz pledged to follow Wideman's lead as to the treatment of the children. Wideman does not believe visitation is in the best interest of the children because "there's no relationship" and the children do not know the Wentzes.

{¶ 8} The GAL testified to a report he issued in which he opined that it was not in the best interest of the children for the Wentzes to have visitation. After listening to the testimony at the hearing, the GAL amended his opinion to state that he does not believe "personal in contact visitation" is in the children's best interest, but he suggested that virtual visits might "furnish the beginning bases to build a relationship between [Mrs. Wentz] and [Wideman]." Of concern to the GAL was the Wentzes' lack of contact with the children.

{¶ 9} The magistrate issued her decision on August 10, 2020. The magistrate found the Wentzes' complaint well-taken and recommended the Wentzes be awarded

4.

supervised visitation with the children at the Children's Rights Collaborative in Lucas County, Ohio, for up to two hours twice a month. Wideman filed objections to the magistrate's decision on August 24, 2020. The Wentzes filed an opposition to Wideman's objections on August 31, 2020. Attached to these objections was Mrs. Wentz's affidavit. After the transcript was filed with the court, Wideman filed supplemental objections to the magistrate's decision, in which she, inter alia, took issue with the veracity of some of the statements in Mrs. Wentz's affidavit. Wideman additionally attached her own affidavit to her supplemental objections providing evidence countering the statements in Mrs. Wentz's affidavit. The Wentzes then filed their supplemental memorandum in opposition to Wideman's objections.

{¶ 10} Relevant to the instant appeal, the judge found the Wentzes' complaint well-taken, in part; however, he modified the magistrate's decision. He ruled that the Wentzes could send cards, gifts, and photographs to the children through Wideman, and could begin twice monthly video chats with the children for not less than 15 minutes each. The judge also found that the relevant statutes were not unconstitutional. With respect to Mrs. Wentz's affidavit, the trial court found that it was not properly before the court and therefore did not consider it. Wideman timely appealed.

**First Assignment of Error**

{¶ 11} Wideman contends the trial court misapplied the governing statutes and precedent.

5.

{¶ 12} We review a juvenile court's decision regarding visitation rights under an abuse of discretion standard. *In re K.M.-B, T.M., E.M.*, 2015-Ohio-4626, 48 N.E.3d 998, ¶ 45 (6th Dist.). "An abuse of discretion requires more than an error in judgment; the trial court's decision must be found to be unreasonable, arbitrary, or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Such a deferential review is warranted in these cases as "oftentimes the crucial evidence lies in the demeanor and attitude of the parties." *Id.*

{¶ 13} At common law, grandparents did not have any legal right of access to their grandchildren. *In re Whitaker*, 36 Ohio St.3d 213, 214, 522 N.E.2d 563 (1988). Therefore, any right to visitation a grandparent may have must be provided for by statute. *In re Martin*, 68 Ohio St.3d 250, 252, 626 N.E.2d 82 (1994).

{¶ 14} The trial court awarded the Wentzes visitation pursuant to R.C. 3109.11, which reads, in relevant part, as follows.

> If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. In determining whether to

6.

grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code.

{¶ 15} R.C. 3109.051(D) then sets forth factors that the court must consider. These factors include: (1) "[t]he prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity"; (2) the location of the residence of the person seeking visitation and the distance between that residence and the child's residence; (3) the time available to the child and parents; (4) the child's age; (5) "[t]he child's adjustment to home, school, and community"; (6) "the health and safety of the child"; (7) "[t]he amount of time that will be available for the child to spend with siblings"; (8) "[t]he mental and physical health of all parties"; (9) the parents' wishes and concerns; and, (10) any "other factor in the best interest of the child."

{¶ 16} Of these factors, a parent's wishes are entitled to "special weight." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, paragraph one of the syllabus. This special weight is granted as it is presumed that a fit parent determines what is in the best interest of their children. *Id*. at ¶ 44, citing *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). However, the parent's wishes are not the sole determining factor of what is in the child's best interest. *Id*. at ¶ 44. Moreover, the law does not require that the parent's wishes be placed before a child's

7.

best interest. *Id.* The Ohio Supreme Court has recognized that a grandparent-grandchild relationship is important and that "maintenance of this relationship may be in the best interest of the child." *In re Whitaker* at 216–17. The burden of establishing that visitation would be in the children's best interest falls upon the grandparents. *In re K.M.-B*, 2015-Ohio-4626, 48 N.E.3d 998, at ¶ 43.

{¶ 17} Here, Wideman maintains that the trial court did not give "special weight" to her wishes. Upon review, the trial court acknowledged that Wideman's wishes were entitled to "special weight," however, the court ultimately determined that some visitation was in the children's best interest after "giving great weight to mother's desires and also carefully considering the relevant factors as to whether visitation would be in the best interest of [O.H.] and [J.H.]." We note that the "weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact." *Jared S. v. Ashley G.,* 6th Dist. Williams No. WM-07-014, 2008-Ohio-1297, ¶ 31, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶ 18} We find that the trial court appropriately gave "special weight" to Wideman's wishes. The trial court's order of minimal video visits addresses Wideman's concerns that the children did not know the Wentzes and her concerns with the facility at which the magistrate had ordered visitation to take place.

{¶ 19} Wideman also argues that the trial court shifted the burden of proof to her. In support, she points to the trial court's judgment entry finding that "[t]here has been a demonstrated history of the paternal grandparents having a loving relationship with

8.

[O.H.] which – for reasons which neither party could accurately and specifically explain – has ended." We do not find this to be evidence that the trial court placed the burden on Wideman. The trial court acknowledged the lack of contact, and merely stated that the reason for the lack of contact was not sufficiently explained. The burden placed upon the Wentzes is the burden of proving that visitation would be in the best interest of the children. We do not find that the trial court's statement places this burden on Wideman.

{¶ 20} Wideman next asserts that the trial court abused its discretion because under Ohio law, grandparents are only entitled to visitation when there is a "disruptive precipitating event," and in this case, Hudson's death did not precipitate the disruption in the grandparent-grandchild relationship as the Wentzes had ceased contact with the children over a year prior to Hudson's death. It is true that the Ohio Supreme Court has found that grandparents' rights to visitation "do not vest until the occurrence of a disruptive precipitating event, such as parental death or divorce." *In re Whitaker*, 36 Ohio St.3d at 215, 522 N.E.2d 563. In the absence of such a disruptive precipitating event, "the common-law view of deferring to parental autonomy in raising the child is observed despite any moral or social obligations that may encourage contact between grandparents and grandchildren." *Id*. However, the death of a parent has been defined as such a disruptive precipitating event. *Id.*

{¶ 21} Here, while the Wentzes had ceased interaction with the grandchildren prior to Hudson's death, it is not clear that, at some point, the parties might not have begun interacting again if not for Hudson's untimely death. Therefore, we find the lack

of contact is not a disqualifying fact, but rather should be, and was, considered as a factor in determining what is in the children's best interest.

{¶ 22} Wideman also insists that the trial court abused its discretion by failing to consider the fact that Mrs. Wentz made multiple false and misleading statements in her affidavit. In its judgment entry, the trial court considered Wideman's claim that Mrs. Wentz's affidavit was false or misleading, and that such statements should reflect poorly on the court's consideration of Mrs. Wentz's testimony, but ultimately the trial court found that the affidavit was not properly before it as it did not authorize additional testimony in the form of formal evidence or affidavits. Wideman contends that this conclusion misses the point and that the affidavit "throws the credibility of [Mrs. Wentz's] testimony as a whole into grave doubt," a relevant factor that must be considered by the trial court under R.C. 3109.11. As we have previously stated, the "weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact." *Jared S.,* 6th Dist. Williams No. WM-07-014, 2008-Ohio-1297, at ¶ 31. We do not find that the trial court's decision to not consider the affidavit is an abuse of discretion.

{¶ 23} After reviewing the evidence and the law, we find that the trial court did not misapply the governing statutes and precedent and its award of limited visitation was not an abuse of discretion. Accordingly, we find appellant's first assignment of error not well-taken.

10.

**Second Assignment of Error**

{¶ 24} Wideman argues that R.C. 3109.11 is unconstitutional as it is applied in this case.

{¶ 25} We start with the premise that a statute is presumed to be constitutional. *Harrold*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, at ¶ 36. Wideman, as the party challenging the statute, must prove the statute unconstitutional beyond a reasonable doubt. *Id.*

{¶ 26} "A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts." *Id.* at ¶ 37. The Ohio Supreme Court has found R.C. 3109.11 constitutional on its face. *Id.* at ¶ 47. Wideman is challenging R.C. 3109.11 as applied to the particular facts of this case. As such, she "bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statute[] unconstitutional and void when applied to those facts." *Id.* at ¶ 38, citing *Belden v. Union Central Life Ins. Co.*, 143 Ohio St. 329, 55 N.E.2d 629 (1944), paragraph six of the syllabus.

{¶ 27} If the challenged statute impinges upon a fundamental constitutional right, we review the statute under a strict-scrutiny standard. *Id.* at ¶ 39. Under this standard, if a statute infringes on a fundamental right, it is unconstitutional "unless the statute is narrowly tailored to promote a compelling governmental interest." *Id.*

11.

{¶ 28} A parent's right to make decisions concerning the care, custody, and control of his or her children is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment. *Id*. at ¶ 40, quoting *Troxel*, 530 U.S. at 66, 120 S.Ct. 2054, 147 L.Ed.2d 49. Therefore, we must find R.C. 3109.11 unconstitutional unless it is "narrowly tailored to promote a compelling governmental interest."

{¶ 29} Although Wideman concedes that Ohio courts have found "that facilitating the grandchild-grandparent relationship through forced visitation *can* be a compelling state interest," she contends that there is no compelling state interest in this case where the grandparents "abandoned" their relationship with O.H. and never sought to reestablish a relationship with O.H., or begin one with J.H, by contacting Wideman. Additionally, she contends that the statute as applied is unconstitutional as the disruptive event did not cause the breach in the grandparent-grandchild relationship, and the statutory scheme failed to give Wideman's wishes the "special weight" to which they are entitled.

{¶ 30} We have already determined that the trial court appropriately gave Wideman's wishes special weight. Furthermore, the Ohio Supreme Court has found R.C. 3109.11, which allows visitation after a "specified predicate event or condition," such as the death of a parent, to be constitutional. *Harrold*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, at ¶ 41, 47. We do not find the fact that the Wentzes did not have contact with O.H. for a period of time before Hudson's death makes the statute unconstitutional as applied here.

12.

{¶ 31} With regard to whether there was a compelling state interest in this case, the Ohio Supreme Court has recognized that maintenance of a grandparent-grandchild relationship may be in the best interest of the child. *In re Whitaker*, 36 Ohio St.3d at 216-217, 522 N.E.2d 563. The Supreme Court has also acknowledged that "[t]he state has a compelling interest in protecting a child's best interest." *Harrold* at ¶ 44, citing *In re T.R.*, 52 Ohio St.3d 6, 18, 556 N.E.2d 439 (1990).

{¶ 32} Here, the trial court found that visitation with the Wentzes would be in the children's best interest after considering the fact that the Wentzes never first requested visitation from Wideman. The trial court may have concluded, as Mrs. Wentz testified, that such a request would have been fruitless. As discussed above, we have found the trial court's finding that visitation would be in the children's best interest was not an abuse of discretion. Moreover, we find the trial court's minimal visitation order (twice monthly video visits for as little as 15 minutes) was narrowly tailored to serve that compelling interest. Therefore, we do not find R.C. 3109.11 unconstitutional as applied. Wideman's second assignment of error is not well-taken.

{¶ 33} The judgment of the Juvenile Division of the Wood County Common Pleas Court is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____

                                                  JUDGE
Gene A. Zmuda, P.J.

                                  _____
Myron C. Duhart, J.                               JUDGE
CONCUR.

                                  _____
                                                  JUDGE

> This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.